Orin OLSON, Plaintiff,

v.

**KILSTOFTE AND VOSEJPKA, INC., a
Minnesota corporation, Defendant,**

and

**RED WING SHOE COMPANY, Inc., a
Minnesota corporation, Defendant
and Third-Party Plaintiff,**

v.

**GEORGE W. OLSEN CONSTRUCTION
CO., Inc., Third-Party Defendant.**

**No. 4–70 Civ. 37.**

United States District Court,
D. Minnesota,
Fourth Division.

June 11, 1971.

Robins, Meshbesher, Singer & Spence, Minneapolis, Minn., appeared by Russell M. Spence and Patrick Delaney, Minneapolis, Minn., for plaintiff.

Meagher, Geer, Markham & Anderson, by Thomas L. Adams, Minneapolis, Minn., for defendants Kilstofte and Vosejpka, Inc., Nye, Johnson & Groman, by James G. Nye, Jr., Minneapolis, Minn., for Red Wing Shoe Company, Inc.

NEVILLE, District Judge.

Plaintiff was employed by a general contractor, the Olsen Construction Company, as a bricklayer when, on October 15, 1968, a cement block wall which he and several others were erecting collapsed, apparently as the result of

a higher than usual wind. Plaintiff was rather seriously injured and is now and has been receiving Workmen's Compensation payments from his employer's insurer. Under the applicable Minnesota law it is clear that his employer, Olsen Construction Company is immune from suit by him for its negligence. Apparently recognizing this plaintiff commenced suit against the Red Wing Shoe Company, the property owner on whose premises the Olsen Construction Company as an independent general contractor was building an addition to a warehouse building. Plaintiff has also sued the architects Kilstofte and Vosejpka, Inc., who designed the building addition for the owner and drew the plans and specifications. Plaintiff alleges negligence on the part of both. At the conclusion of the case, and with the advice and consent of both counsel, the court submitted to the jury special verdicts in which, consistent with the Minnesota comparative negligence statute, Minn.Stat. § 604.01 it was directed to determine the percentage of negligence on the part of Red Wing Shoe Company, Kilstofte and Vosejpka, Inc., Olsen Construction Company, and the plaintiff himself. The jury returned answers attributing 100% of negligence to Olsen Construction Company and none to any of the others, finding however in response to another question included in the special verdict form that plaintiff suffered damages in the amount of $125,000. Since Olsen Construction Company, the workmen's compensation payer is immune from suit, the court ordered the entry of judgment in favor of the defendants Red Wing Shoe Company and Kilstofte and Vosejpka, Inc., the architects and against plaintiff. It is this judgment that plaintiff challenges in this motion.

The court does not hear plaintiff to complain at any length or with any insistence of the jury verdict insofar as it eliminated all liability on the part of the architects. Plaintiff had originally asserted liability based on their preparation of allegedly faulty plans and specifications and on their failure more frequently to inspect the premises during construction. There was however no evidence adduced from any other professional architect or engineer as to the degree of care normally exercised by architects of similar standing and training in the community. Plaintiff did not at the hearing on the motion seriously argue the architect's liability and it is reasonably clear to the court that had the jury found against Kilstofte and Vosejpka, the verdict probably could not stand. That question is not now before the court however, in view of the jury's findings.

Plaintiff earnestly contends that he should be able to hold the Red Wing Shoe Company liable on any one of several theories. It is clear to the court that the jury well could find that had the cement block wall been properly braced during erection, the collapse in all likelihood would not have occurred. Further, the jury well could find that plaintiff was not contributorily negligent.

Plaintiff first claims that Red Wing Shoe Company controlled the independent contractor, Olsen Construction Company to the extent that it insisted that an open driveway be maintained at all times to afford access to another part of the building to which the addition was being made; that this wall adjoined such driveway and that by respecting such direction, no proper bracing was or could be employed on one side of the wall. As the court remembers the evidence (not having been provided with a transcript) the jury could find that bracing the wall could have been done without invalidating this requirement. The scaffolding was on the driveway side of the wall and whatever its width such at least amounted to space available for plank or other bracing. There was no other attempt to prove or establish any control by the landowner over the independent contractor. The court instructed the jury rather fully on the law of independent contractor and the usual factors that are involved in the concept of control. The court instructed and

read Section 414 of the Restatement of the Law of Torts, to the effect that one who retains control of any part of the work of an independent contract may be liable to others for the independent contractor's negligence.

Plaintiff's second theory seeks to hold the Red Wing Shoe Company liable because it was the landowner. The court although not entirely agreeing that its content applied to this case, at plaintiff's request also read to the jury Section 422 of the Restatement of the Law of Torts which is as follows:

"A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

(a) while the possessor has retained possession of the land during the progress of the work, or

(b) after he has resumed possession of the land upon its completion."

The court believes this must be read in conjunction with Section 426 of the Restatement which the court also incorporated in its instructions to the jury.

The comments to Section 422 read in part as follows:

"The rule stated in this Section applies in favor of any person toward whom the possessor of land is under a duty with respect to the physical condition of the land. It applies in favor of persons traveling on the public highway, or upon adjoining premises, and also in favor of persons upon the land, such as invitees, to whom the possessor owes such a duty."

The court perceives this to apply to a situation, for instance, where an independent contractor overnight leaves the premises in a dangerous condition and someone falls into a hole or otherwise and injures himself as the result of a negligently defective condition. If the owner is in possession and can or should observe the condition he cannot avoid liability behind the skirts of an independent contractor. That is quite different however from the case where an employee is injured while working on a construction job. No landowner reasonably can be expected to attend each day the progress of a structure being erected on his property, even though he continues to do business and to operate on another part of the premises, nor in the court's opinion does the Restatement so contemplate. He cannot supervise every time a crane is lifted, or cement is poured, or bricks are laid and the court does not believe vicarious liability in such circumstances for negligence of the independent contractor attaches under the doctrine of control claimed to exist in this case, nor under the doctrine of owner or possessor of realty nor of *respondeat superior*. At least such cannot be said as a matter of law, which is what plaintiff is asking the court to do in this motion despite the jury's verdict under what the court deems were ample instructions.

Plaintiff's third contention is that even if his injuries resulted solely from the negligence of the Olsen Construction Company, the owner of the premises Red Wing Shoe Company remains liable for such injury on the grounds that its duty to take safety precautions was non-delegable. It is clear to the court that the relationship between Red Wing and Olsen Construction Company is that of owner-independent contractor; nor does plaintiff dispute the general principle that an owner who engages an independent contractor generally is not liable for the negligence of the independent contractor or his employees. *See,* Rausch v. Julius B. Nelson & Sons, Inc., 276 Minn. 12, 149 N.W.2d 1 (1967). Plaintiff urges however that this case falls within an exception to the general rule of the owner's non-liability because the work in which he was engaged was of a type likely to create a particular risk of physical harm unless special precautions were taken or be-

cause the work involved a special danger inherent in it. He relies on the following sections of the Restatement, Second, Torts:

§ 413. Duty to provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor.

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

Comment "e" to section 413 states:

The fact that the contract under which the work is done provides that the contractor shall take the necessary special precautions does not necessarily relieve the employer from liability, since he may be liable under the rule stated in Section 416."

§ 416. Work Dangerous in the Absence of Special Precautions.

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Comment "c" under section 416 provides in part:

* * * This Section deals with the liability of one who employs a contractor to do such work, even though he stipulates in his contract or in a contract with another independent contractor that the precautions shall be taken, for bodily harm caused by the negligent failure of either contractor to take such precautions. In such case the contractor who is employed to take the precautions is under a duty to indemnify his employer for any liability which the contractor's negligence in failure to take reasonably adequate precautions may bring upon him. However, the fact that the contract contains express stipulations for the taking of adequate precautions and that the contractor agrees to assume all liability for harm caused by his failure to do so, does not relieve his employer from the liability stated in this Section."

§ 427. Negligence as to Danger Inherent in the Work.

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

The theory of liability expressed in the above quoted sections of the Restatement does not involve actual negligence on the part of the owner as where there has been some interference with the work of the independent contractor or other negligent exercise of control retained by the owner over the performance of the work,[1] see, e. g. Thill v. Modern Erecting Co., 272 Minn. 217, 136

---

1. As indicated above, the issue of Red Wing's liability in this respect was fully submitted to the jury.

N.W.2d 677 (1965), or where the owner fails to exercise reasonable care to see to it that his premises are safe for business invitees which, under Minnesota law, include servants of an independent contractor. *See e. g.* Whirlpool Corp. v. Morse, 222 F.Supp. 645 (D.Minn.1963), aff'd 332 F.2d 901 (8th Cir. 1964); Zuercher v. Northern Jobbing Co., 243 Minn. 166, 66 N.W.2d 892 (1954). At the same time, the rule stated in these sections of the Restatement does refer to injuries resulting from the negligence of an independent contractor, and is thus not limited to cases involving "ultra hazardous activity."[2]

Each of the cited sections of the Restatement uses the term "others" to describe the persons to whom an owner will be held liable in the event of injury resulting from breach of a non-delegable duty. None of the sections define the term with any clarity. While the Minnesota Court has not yet spoken on this issue, the courts of other jurisdictions appear to evidence a conflict over the question of whether "others" should be read to include the employees of an independent contractor as well as third persons. *Compare,* Welker v. Kennecott Copper Co., 1 Ariz.App. 395, 403 P.2d 330 (1965), *with* Woolen v. Aerojet General Corp., 57 Cal.2d 407, 20 Cal. Rptr. 12, 369 P.2d 708 (1962); *See generally,* 41 Am.Jur.2d Independent Contractors, §§ 40 n.4, and 42 (1968); 57 C.J.S. Master and Servant § 600 (1948).[3] The reason for distinguishing the two classes is the fact that injuries

to the employees of an independent contractor, which are the direct and proximate result of negligence on the part of the employer or a fellow servant, fall within the comprehensive program for industrial accident protection embodied in Minnesota's Workman's Compensation Act, Minn.Stat. § 176.01 et seq. For this reason, conceptual difficulties arise in attempting to apply the non-delegable duty doctrine to such injuries. Since the statutory remedy afforded employees under Workman's Compensation is exclusive as against the employer, under the formulation adopted by the state legislature an employee forfeits any common law cause of action that may have arisen out of the negligence of his employer which results in injury occurring within the scope of his employment. The doctrine of non-delegable duty if literally applied destroys the liability barrier between an owner and an independent contractor, and for practical purposes treats the two separate entities as one before the law. Thus, the independent contractor in effect is made the agent of the owner with respect to the performance of certain non-delegable duties. Following this line of reasoning, if in fact the Olsen Construction Company can be said to be an "agent" and not an independent contractor, then it would follow that Red Wing Shoe Company would be immune from suit at common law under the well established rule that as "principal," it can be subject to no greater liability than its agent. The agent being immune from suit at com-

---

2. In any case, it is clear that the work involved in the present case is not the kind that would produce injury as a natural and necessary consequence of its being undertaken, regardless of the manner in which it is done. See generally, 57 C.J.S. Master and Servant § 587 (1948); 41 Am.Jur.2d Independent Contractors, § 47 (1968).

3. In Rausch v. Julius B. Nelson & Sons, Inc., *supra,* the Minnesota court stated that "even a general contractor is not liable for the negligent acts and omissions of his subcontractor unless the right of the former to control or supervise the

latter as to time, place, and manner of performing the work exists by force of the contract between them, as interpreted in the light of all the surrounding circumstances, or unless the duty to assume such control and supervision is imposed, as a matter of law, by reason of some peculiar relation which the person for whom the work is being performed bears *to third persons* as to the time, place, or manner of performance." (emphasis added). However, it is not entirely clear from the opinion that this language was intended to preclude the existence of any such duty to the employees of an independent contractor.

mon law for negligence, the principal would be likewise immune from suit; or put another way, the "agent's" procuring of workman's compensation insurance is in this instance for the benefit of its "principal" as well as for itself.

Finally, it should be noted that the basic premise for the doctrine of non-delegable duty is that one who requests the performance of work which is of such a nature that others will probably be injured unless precautions are taken should not be permitted to "escape" liability by the device of a contract with an independent contractor. However, with respect to the employees engaged in the work to be performed, as opposed to third parties, the contractee does not "escape" liability by delegating the duty to take such precautions to an independent contractor. As the court noted in Welker v. Kennecott Copper Co., *supra*, 403 P.2d at 339:

"The contractee either directly or indirectly pays Workman's Compensation premiums. No valid reason occurs to this court to penalize the legal-industrial tool of the contract with an independent contractor, so as to increase the liability of the builder simply because this device is used. The reason for the exception to the general rule being absent, the court does not believe that the exception should pertain."

It should be apparent that this court is strongly persuaded that the employees of an independent contractor should not be included among those to whom a contractee owes a non-delegable duty to take precautions required by the specific work in which they are engaged. At the same time the adoption of such a broad policy of nonliability should, if possible, be left to the state court, which as indicated, has not yet had occasion to speak to the precise issues here being discussed. However, even if a duty is found to exist as to persons such as the plaintiff, his status as an employee engaged in the work must necessarily affect the nature and extent of that duty.

The court recognizes that any job or employment in the building industry is fraught with some risk and danger if not carefully performed. By the very nature of the business, employees are exposed to injuries as cranes are hoisted, walls are built, and equipment is operated and transported. However for those engaged in such work, as opposed to passersby and other third persons, these are normal occupational hazards. While the nature of construction work carries with it a certain "probability of injury" in the event of negligence, which could be said to "inhere" in the work, it cannot be said, at least as to those employed in the building trades, that the danger is "special" or the risks "peculiar" except in an unusual case not presented by the facts herein. Plaintiff was engaged in erecting a masonry wall consisting of two segments, 48 feet by 16 feet each. The segment on which plaintiff actually worked abutted on defendant's pre-existing warehouse wall. The segment which ultimately fell causing plaintiff's injuries stood free, without structural support of any kind. The project was not an unusual one as clearly demonstrated by the testimony of several of plaintiff's own witnesses. Any danger involved in the work was not the result of a condition or defect on the premises either hidden or otherwise for which the owner might have a responsibility but rather, was created in the process of construction as a result apparently of the speed with which the work was accomplished and the failure to provide lateral support. Danger may be said to inhere in the work in the sense that the consequences of the law of gravity inhere in every undertaking. However, neither the work nor the danger created in the process of its completion can in any sense be said to be peculiar or extraordinary. Likewise, the precautions required to guard against the danger were neither novel nor unconventional. In short, plaintiff's injuries resulted from the failure of his employer to take ordinary and customary precautions in the performance of a rou-

tine construction job. To hold as plaintiff requests would negate almost entirely the doctrine of independent contractor. There is scarcely anything that a person himself might negligently do that an independent contractor might not also do. In light of the facts of this case, to remove the time hallowed insulation of the doctrine of independent contractor is not something this court feels it should do, nor does it believe the issue was one which should have been submitted to the jury.

Additional error is assigned because of the court's refusal to admit a certain inspection report into evidence. Ahti Maki was called as a witness and testified that as an official inspector for the State of Minnesota Department of Labor and Industry it falls within his duties to inspect factories and locales where injuries occur to employees; that on October 22, 1968, a week after plaintiff's injuries, he visited the Red Wing Shoe premises and talked to one Glen Peterson and made a report thereof to the effect that he, Peterson, was working for the Olsen Construction Company, the general contractor at the time of the wall's collapse; that Red Wing Shoe personnel had requested that no bracing be used on the north side of the wall because the braces would block the truck loading area. The court ruled this hearsay, since Maki was in his report purporting to tell what Peterson had said to him as to what some other person from Red Wing Shoe Company previously had said to him, Peterson. The Maki report was not a report of what he, Maki, observed factually and though the report is blessed with the aura of an official report, it could not be admitted in view of its double hearsay nature. Plaintiff, when the report was excluded called Glen Peterson to the witness stand. He testified that he was pouring concrete floors in another building at the time of the plaintiff's injury; that no one had told him to keep off the driveway; that he never was told any such thing as stated in the report by anyone from Red Wing Shoe Company and so he denied flatly that he ever made any such statement to Maki.

 This evidence was so unreliable and of such double hearsay nature that the court believes the ruling to exclude the report was not error.

Plaintiff had a full and fair trial, represented by very competent counsel, and the court does not believe judgment notwithstanding the verdict or a new trial should be granted.

A separate order has been entered.