Brian STOLTZE *v.* ARKANSAS VALLEY ELECTRIC
COOPERATIVE CORPORATION

03-47                                        127 S.W.3d 466

Supreme Court of Arkansas
Opinion delivered October 30, 2003

604

*Patton, Tidwell & Schroeder, L.L.P.*, by: *Christie Gunter Adams,* for appellant.

*Friday, Eldredge & Clark*, by: *James C. Baker, Jr.* and *Alan G. Bryan*, for appellee.

J IM HANNAH, Justice. Appellant Brian Stoltze appeals an order of the Sebastian County Circuit Court, Greenwood Division, granting summary judgment to appellee Arkansas Valley Electric Cooperative Corporation ("AVECC"). While employed by Arkansas Electric Cooperative, Inc. ("AECI"), an independent contractor of AVECC, Stoltze suffered a severe burn injury due to an electric shock. Stoltze filed suit against AVECC. He acknowledged the general rule that an employer owes no duty to employees of its independent contractors; however, he argued that several exceptions applied to his case which would make AVECC liable. AVECC moved for summary judgment, arguing that it owed no duty to Stoltze. The trial court granted AVECC's motion for summary judgment and dismissed Stoltze's case with prejudice.

Stoltze raises four issues on appeal. He argues that the following exceptions create a duty of care on the part of AVECC toward Stoltze, in that: (1) there was sufficient evidence to demonstrate that AVECC was negligent in hiring AECI, thus the negligent hiring exception should be applied; (2) there was sufficient evidence to demonstrate that AVECC negligently performed certain duties, thus the negligent performance exception should be applied; (3) AVECC was charged by law or contract with performing specific duties, thus the specific duty exception should be applied; and (4) the inherently-dangerous exception to the general rule should be extended to protect employees of the independent contractor.

We affirm the trial court on all points. This case was certified to this court by the court of appeals. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(5).

*Facts*

On November 17, 1997, Stoltze was injured while working as a lineman for AECI. His employment resulted from a contract between AECI and AVECC, by which Stoltze would perform upgrades on electrical lines. Stoltze sued AVECC to recover damages for injuries he sustained as a result of an electrical shock. This shock resulted from Stoltze's touching a "hot wire" while attempting to replace an electrical wire.

Stoltze testified that he was wearing rubber gloves at the time of the accident. He stated that he was not wearing rubber sleeves, and he stated that, to his knowledge, at the time of his injury, rubber sleeves were not available to any AECI employees. Stoltze also testified that he was not warned by any of his crew members that it was dangerous for him to stand on a wire while placing a rubber blanket over another wire.

## Summary Judgment

■ Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Jackson v. City of Blytheville Civil Serv. Comm'n*, 345 Ark. 56, 43 S.W.3d 748 (2001). The evidence is viewed most favorably for the person resisting the motion, and any doubts or inferences are resolved against the moving party. *Id.* However, when there is no material dispute as to the facts, the court will determine whether "reasonable minds" could draw "reasonable" inconsistent hypotheses to render summary judgment inappropriate. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). In other words, when the facts are not at issue but possible inferences therefrom are, the court will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds differ on those hypotheses. *Id.*

## Liability of Employer for Negligence of Independent Contractor

■ The general rule is that an employer is not responsible for the negligence of his or her independent contractor. *See Jackson v. Petit Jean Elec. Co-op.*, 270 Ark. 506, 606 S.W.2d 66 (1980). However, we have recognized that there are exceptions to the rule. We have noted that an employer may be held liable for the conduct of a careless, reckless, or incompetent independent contractor when the employer was negligent in hiring the contractor. *See Arkansas Pools, Inc. v. Beavers*, 281 Ark. 109, 661 S.W.2d 395 (1983). We have also recognized an exception where the employer has undertaken to perform certain duties or activities and negligently fails to perform them thereafter or performs them in a negligent manner. *See Gordon v. Matson*, 246 Ark. 533, 439 S.W.2d 627 (1969). In addition, we have noted that an employer may be

liable to *third parties* when he or she delegates to an independent contractor work that is inherently dangerous. *See Jackson*, 270 Ark. at 510 (emphasis added).

*Negligent Hiring*

Stoltze argues that he presented evidence that summary judgment was improper because he raised a question as to whether AVECC was negligent in hiring his employer, AECI. Stoltze states:

> Apparently, all AECI employees performed hazardous work with high-voltage electrical lines without ever wearing rubber sleeves, even though wearing rubber sleeves is, in certain circumstances, required even by AECI's own safety manual. . . . This failure of AECI to provide rubber sleeves, when the use of rubber sleeves was required by its own safety manual, amounts to incompetence to perform the work contemplated by the contract with AVECC as well as negligence towards its employees.

Stoltze argues that AVECC may be liable for AECI's incompetence because AVECC "did not adequately inquire into AECI's competence to perform the tasks required by the contract."

Bill Peters, the director of engineering for AVECC, stated that, in order to participate in AVECC's bidding process, an independent contractor must be on the qualified bidder list. Peters stated that, when hiring an independent contractor, AVECC does not inquire into the safety history of the independent contractor. Rather, AVECC relies on its consulting engineer firm, Allgeier-Martin, to determine whether an independent contractor is a qualified bidder. Peters stated that, in formulating a qualified bid list, Allgeier-Martin reviews criteria such as the contractor's experience and references, and whether the contractor has an Arkansas contractor's license. Peters stated that he thought "safety would fall within [the review]." An Allgeier-Martin representative stated that "[s]afety considerations have never been part of our scope of work with respect to construction," and that safety issues are addressed in the contract. The record indicates that AECI had been on AVECC's qualified bid list for "about 25, 30 years or more." When asked whether there was a reevaluation or review of criteria that is performed on bidders that have made it to the qualified bidder's list, Allgeier-Martin's representative stated: "If a contrac-

tor on that list is relatively active [in] expressing interest in various projects and we have no other reason to review their qualifications then there's no formal process."

Stoltze maintains that if AVECC had investigated the competence of AECI, then AVECC would have discovered that AECI did not make rubber sleeves available to its employees. He also states that AVECC should have known, through observation of AECI employees at work, that rubber sleeves were not made available to them at any time. He argues that "[b]ecause the Allgeier-Martin employees were expected to report safety violations of this sort, AVECC, through its contractor Allgeier-Martin, had constructive knowledge of AECI's incompetence to perform the dangerous work on energized lines required by their contract with AVECC."

Stoltze maintains that "[t]he failure of AECI to provide rubber sleeves to its employees was a proximate cause of [his] injury." To support his argument, Stoltze submitted the affidavit of John St. Clair, an electrical engineer. St. Clair stated: "If Brian Stoltze had been wearing rubber sleeves, it is more probable than not that he would not have been shocked when his elbow came into contact with the hot wire."'Larry Harp, Manager of Safety and Loss Control at AECI during Stoltze's employment, testified that "putting rubber sleeves on would not overcome the danger created by putting a wire of a different potential inside the bucket while the employee worked on an energized wire, even with rubber sleeves." Thus, AVECC maintains that it was Stoltze's own negligence that caused the accident.

In *Western Arkansas Telephone Co. v. Cotton*, 259 Ark. 216, 532 S.W.2d 424 (1976), we stated:

> Although there is some authority to the contrary, it has generally been held that the duty rests on the employer to select a skilled and competent contractor, and the employer is liable to third persons for the negligent or wrongful acts of an independent contractor employed by him where he knew his character for negligence, recklessness, or incompetency at the time he employed him, or where the employer was negligent in failing to exercise reasonable care in the selection of a competent contractor. However, where the independent contractor is in fact a competent person to perform the work, it is of no consequence whether or not due care was used in the selection. The fact that a contractor is negligent in respect of the

work in question raises no presumption that the employer was guilty of negligence in employing him.

*Cotton*, 259 Ark. at 218 (citing *Ozan Lumber Co. v. McNeely*, 214 Ark. 657, 217 S.W.2d 341 (1949)). We have noted that "[t]he cases also hold that the fact that a principal knows that [an] independent contractor is personally ignorant or untrained in the actual performance of the work does not, of itself, make the owner liable to the contractor's employees." *Cotton*, 259 Ark. at 219. We have further noted that "an employer who has previous successful experience with an independent contractor in the performance of his work cannot be held liable on the theory of the negligent selection of the contractor." *Id*. (citing *Kueckel v. Ryder*, 54 App. Div. 252, 66 N.Y.S. 522 (1900)).[1] The burden of proof is upon the party alleging negligence to prove the employer either knew or should have known of the incompetency of the independent contractor. *Beavers, supra.*

In *Cotton, supra*, an employee of Hutcherson's Tree Service, an independent contractor, was injured while taking down some telephone cables for the primary contractor, Western Arkansas Telephone Co. *Cotton*, 259 Ark. at 217. The employee and Hutcherson's Workmen's Compensation carrier brought an action against the telephone company on the theory that the telephone company was negligent in selecting Hutcherson as a contractor to remove the telephone cables. *Id*. Hutcherson had performed one other job for the telephone company prior to the job in which the employee was injured. *Id*. at 217. The court noted that "[i]n selecting Hutcherson to remove telephone cables, appellant made no inquiries of Hutcherson nor any outside source to determine if Hutcherson was competent to perform the service." *Id*.

---

[1] Stolze asserts that in *Cotton, supra*, we erroneously cited *Kueckel v. Ryder*, 54 App. Div. 252, 66 N.Y.S. 522 (1900). He states that *Kueckel, supra*, does not hold that an employer who has previous successful experience with an independent contractor in the performance of his work cannot be held liable on the theory of negligent selection of the contractor. Stoltze does not indicate what he believes is the holding in *Kueckel*. AVECC states that the *Kueckel* court "discussed the 'doctrine of independent contractors,' the requirement of 'competent persons' for the job at issue, and the fact that the independent contractor ultimately enlisted was indeed competent. ...While the *Kueckel* court did not use the same language as the *Cotton* court, use of the case by the Arkansas Supreme Court was proper."

In *Kueckel, supra*, the employer had previous successful experience with the independent contractor in the performance of his work. We cannot say that the use of *Kueckel* by the *Cotton* court was in error.

AVECC states that "AECI had proven itself time and time again as a competent independent contractor which has had a history of contracting with AVECC dating back for decades before Brian Stoltze's accident." AVECC further states that Allgeier-Martin has assisted AVECC in the bidding process "in excess of 40 years."

AVECC argues that "competency is established in a firm of engineering consultants which had a relationship with AVECC spanning four decades and an independent contractor in AECI which had extensive experience in performing the very job required by the contract. Even at first glance, this should negate any claim of negligent selection." We agree.

In the present case, AECI had performed numerous jobs for AVECC over the course of at least twenty-five years. In *Cotton*, the independent contractor had performed only one prior job for the primary contractor when the independent contractor's employee was injured. Also, in *Cotton*, the primary contractor made no inquiries concerning the competency of the independent contractor. In the present case, AVECC hired a consulting firm to evaluate its potential bidders.

The record contains no evidence that AVECC had reason to believe that AECI was incapable of adequate performance at the time the contract was entered into. Stoltze did not dispute the fact that at the time the contract was entered into, AECI had successfully performed numerous jobs for AVECC over the course of several years. We hold that Stoltze failed to show that there is a genuine issue as to a material fact or that reasonable differing inferences could be drawn from the undisputed facts. Therefore, the trial court did not err in granting summary judgment. In view of our holding on this point, we need not address the issue of whether the negligent hiring exception extends the liability of the principal to the employees of the independent contractor. *See Jackson*, 270 Ark. at 510.

### Negligent Performance of Duties

Stoltze next contends that AVECC should be liable because it undertook to perform certain safety measures and negligently failed to perform them thereafter or performed them in a negligent manner. Stoltze argues that the language of the contract indicates

that AVECC maintained control over the work. To support his argument, Stoltze points to the following contract provisions:

> The contract between AVECC and AECI provides that "[AVECC] reserves the right to require the removal from the Project of any employee of the [AECI] if, in the judgment of [AVECC], such removal shall be necessary in order to protect the interest of [AVECC]." The Contract also provides that "[Allgeier-Martin] may recommend to [AVECC] that [AECI] suspend the work wholly or in part for such period or periods as [Allgeier-Martin] may deem necessary due to . . . such other conditions as are considered unfavorable for the satisfactory prosecution of the work or because of the failure of [AECI] to comply with any of the provisions of the Contract."

The entrusting of work to an independent contractor does not remove the duty of reasonable care from one who retains control over any part of the work. *Williams v. Nucor-Yamato Steel Co.*, 318 Ark. 452, 455, 886 S.W.2d 586 (1994). We have stated:

> When . . . there is no demonstration of an exercise of actual control or violation of the duty to warn by the one engaging an independent contractor to perform work, we have turned to the contract to see if the prime contractor or owner retained the right of control or supervision and thus assumed an additional duty [of] care toward the employees doing the work.

*Id*. We further stated that "[w]hen there is no such right retained in the contract, we affirm a summary judgment entered in favor of the owner or prime contractor." *Id*. In *Williams, supra*, we cited general authority from Restatement (Second) of Torts § 414:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work his own way.

*Williams*, 318 Ark. at 455-56 (citing Restatement (Second) Torts § 414, cmt. c (1965)).

■ The contract provisions cited by Stoltze are insufficient to show that AVECC retained the right of control. The provisions do nothing more than give AVECC a general right to order the work stopped or resumed. Moreover, the contract provides that AECI "shall cause the construction work on the Project to receive constant supervision by a competent superintendent . . . who shall be present at all times during working hours where construction is being carried on." It further provides that [AECI] "will make available for use in connection with the proposed construction all necessary tools and equipment and qualified superintendents and foremen." In the present case, "the contract appears to have been drafted carefully to assure that all control and supervision other than priorities of projects remained with" AECI and not AVECC. *See Williams,* 318 Ark. at 456.

Still, Stoltze argues that the contract states that all work shall be performed "to meet at least the safety rules and regulations prescribed by [AVECC] for its employees." The rest of the provision states that this includes "the use of rubber gloves, hot sticks and associated protective equipment. . . . " Stoltze argues that this is evidence that AVECC attempted to put in place certain safety requirements.

Stoltze also argues that "the APPA safety manual, in use by AVECC at the time of this incident, was dated 1988. It does not comply with the OSHA rules regarding rubber gloves that were in effect in 1997." According to Stoltze, the APPA safety manual in use at the time of the injury did not require rubber sleeves when the voltage between any two conductors does not exceed 7500 volts; he states that this is not in compliance with OSHA.

In addition, Stoltze states that the National Electric Safety Code ("NESC") requires the use of rubber sleeves when employees approach any conductive object within 2.2 feet when the object is energized and not fully insulated from the employee. Further, he cites NESC Rule 441 A3b, which provides that employees must use rubber sleeves when exposed to energized lines or parts that are not covered with insulating protective equipment. Stoltze also cites Ark. Code Ann. § 23-17-236(a) (Repl. 2002), which provides that "any violation by a telecommunications company or cooperative of the National Electric

Safety Code or requirements established by the commission shall merely be evidence of negligence."

■ AVECC states:

> The Appellant attempts to connect alleged violations of OSHA, alleged violations of the National Electric Safety Code (NESC), and an alleged violation of the Code of Federal Regulations *by AECI* in not providing rubber sleeves to its workers due to some alleged negligent performance of AVECC.

AVECC's contention is well taken. Stoltze does not explain how the alleged violations of AECI support his argument that AVECC was negligent in performance of its duties.

■ Finally, Stoltze argues that, "[a]nother area in which AVECC undertook certain safety measures is that the local cooperatives, such as AVECC, made safety training available to employees of AECI." This argument has no merit because, as AVECC states, "AECI presented safety meetings and training to the members of various state electric cooperatives, such as AVECC —not the other way around as Appellant asserts." Indeed, Tommy Lee Stark, Stoltze's supervisor at AECI, stated that AECI put on the safety training at the cooperatives. In sum, Stoltze has failed to demonstrate that AVECC should be liable to Stoltze because it undertook to perform certain safety measures and negligently failed to perform them thereafter or performed them in a negligent manner.

### Specific Duty

Stoltze also argues that AVECC can be held liable for the negligent acts of AECI because AVECC is charged by law or contract with performing the specific duty of complying with safety regulations. To support his argument, Stoltze cites *Becker v. Kreilen,* 770 N.E.2d 315, 318 (Ind. 2002). In that case, the Supreme Court of Indiana stated that one exception to the general rule of non-liability of a principal for an independent contractor's negligence is "where the principal is by law or contract charged with performing the specific duty." *Becker,* 770 N.E.2d at 318.

In 1992, AVECC was cited by OSHA for a safety violation because an employee attempting to change out a transformer on a line with 7200 volts was not wearing rubber gloves or an equiva-

lent method of insulation or guarding. As a result of the violation, AVECC entered into an Informal Settlement Agreement with OSHA in which AVECC agreed to comply with provisions of the Occupational Safety and Health Act of 1970. Stoltze argues that AVECC's "failure to comply with the terms of the OSHA settlement was a direct violation of that duty charged to AVECC by that agreement," and that "AVECC had certain duties imposed by law that subject it to the specific duty exception, and it should be held to owe a duty of care to Stoltze as a result."

AVECC argues that:

> [t]he alleged violation of AVECC was a failure to provide *gloves to its employees* and not *sleeves to the employees of the independent contractors*. It was directed to be posted for the employees of AVECC. There is absolutely no connection between the requirements of the OSHA Informal Settlement and the allegations of Brian Stoltze.

■ An employer has a duty to maintain a safe place of employment for its employees. *See* Ark. Code Ann. § 11-2-117 (Repl. 2002). We have interpreted this statute as not being applicable unless an employer-employee relationship exists. *See Horn v. Shirley*, 246 Ark. 1134, 441 S.W.2d 468 (1969). Since AVECC and Stoltze did not have an employer-employee relationship, this statute is inapplicable.

■ Stoltze next argues that a specific legal duty can also be applied through directives issued by the Rural Electrical Association ("REA"). He refers to a bulletin issued by REA in 1967 which provides guidelines that are to be followed by electric utilities that borrow funds from the REA. Stoltze fails to explain how financial guidelines create a specific legal duty for AVECC to protect employees of AECI, and he fails to support this contention with a convincing argument or citation to authority. Where no citation to authority or convincing argument is offered, we decline to address the issue on appeal. *Norman v. Norman*, 347 Ark. 682, 66 S.W.3d 635 (2002).

### Inherently-Dangerous Exception

■ . ■ Finally, Stoltze argues that the inherently-dangerous exception should apply to protect employees of the independent contractor.

In *Williams, supra*, we stated:

> When an owner or general contractor has hired an independent contractor to perform work, as in this case, the rule is that the general contractor or owner has a duty to exercise ordinary care and to warn in the event there are any unusually hazardous conditions existing which might affect the welfare of the employees. The recognized exception occurs if the prime contractor [or owner] has undertaken to perform certain duties or activities and negligently fails to perform them thereafter or performs them in a negligent manner. *Aluminum Ore. Co. v. George*, 208 Ark. 419, 186 S.W.2d 656 (1945).

*Williams*, 318 Ark. at 454–55 (citing *Gordon v. Matson*, 246 Ark. 533, 439 S.W.2d 627 (1969)). However, "[t]he duty of an employer of an independent contractor to use ordinary care or to warn of latent dangers does not contemplate a duty to warn of obvious hazards which are an integral part of the work the contractor was hired to perform." *Jackson*, 270 Ark. at 509. In *Jackson, supra*, the court explained:

> Although the general rule is that an employer is not responsible for the negligence of his independent contractor, . . . a well-recognized exception. . . extends liability when the work which the employer delegates to an independent contractor is inherently dangerous. This exception is grounded in a recognition that the possibility of harm to others is so great when the work activity is inherently dangerous that the law tolerates it only on terms of insuring the public against injury. We impose vicarious liability under these circumstances to insure that the public has legal access to a financially responsible party. The exception was obviously intended to protect those who have no direct involvement with the hazardous activity, are only incidentally exposed to its risks and have no direct means of insuring themselves against loss. Since employees of an independent contractor are directly involved in the hazardous activity, have knowledge of the risks and are insured against injury by worker's compensation, we perceive no sound justification for expanding the exception to include persons it was surely not designed to protect.

*Jackson*, 270 Ark. at 510 (citations omitted).

Stoltze states: "Admittedly, Arkansas Courts have decided that this exception should not apply so as to protect employees of the independent contractor." However, he argues that policy reasons and the facts in the present case support rejection of our holding in *Jackson* that the inherently-dangerous exception does not apply to employees of an independent contractor.

Stoltze states that the *Jackson* court was incorrect in stating that the employees of the independent contractor are directly involved in the hazardous activities. Stoltze states that he was classified as a groundman, and that he was not qualified to work on energized lines. Stoltze also argues that the *Jackson* court was incorrect in stating that the employees of independent contractors have knowledge of the risks. He maintains that no one ever told him that "his activities of that morning were dangerous." Finally, Stoltze argues that the availability of workers' compensation should not bar recovery against the principal because workers' compensation, as it operates today, does not adequately reimburse victims of catastrophic incidents like the one in this case.

In *Jackson, supra*, a case which is factually similar to the present case, the court stated that "it cannot be seriously contended that [the primary contractor] should isolate lines from the employees of an electrical contractor whose compensation and contractual obligations expressly contemplate working around energized lines." *Jackson*, 270 Ark. at 509. In the present case, the contract provided that AECI "shall . . . employ, in connection with construction of the Project, capable, experienced and reliable foremen and such skilled workmen as may be required for the various classes of work to be performed." The contract also provides that AECI was to provide a "competent superintendent . . . who shall be present at all times during work hours where construction is being carried on."

Even if we assume that Stoltze was a groundman and not qualified to work on energized lines, by the plain language of the contract, it was AECI's responsibility, not AVECC's responsibility to ensure that qualified workers performed the job. In addition, the contract provides that it was AECI's responsibility to employ a superintendent, as well as competent foremen, to oversee the job. It follows that it was AECI's responsibility to warn Stoltze of dangers inherent in working with energized wires. As to Stoltze's third argument, that he is not adequately compensated by

workers' compensation laws, we find *Olson v. Kilstofte and Vosejpka*, 327 F. Supp. 583, 587 (D. Minn. 1971), to be instructive:

> Since the statutory remedy afforded employees under Workman's Compensation is exclusive as against the employer, under the formulation adopted by the state legislature an employee forfeits any common law cause of action that may have arisen out of the negligence of his employer which results in injury occurring within the scope of his employment. The doctrine of non-delegable duty if literally applied destroys the liability barrier between an owner and an independent contractor, and for practical purposes treats the two separate entities as one before the law.

*Olson*, 327 F. Supp. at 587. In upholding a verdict against the employee of an independent contractor, the *Olson* court stated:

> To hold as plaintiff requests would negate almost entirely the doctrine of independent contractor. There is scarcely anything that a person himself might negligently do that an independent contractor might not also do. In light of the facts of this case, to remove the time hallowed insulation of the doctrine of independent contractor is not something this court feels it should do . . . .

*Olson*, 327 F. Supp. at 589.

Like the *Olson* court, we are not inclined to overrule longstanding precedent on the law concerning independent contractors. Accordingly, we will not overrule the longstanding rule in Arkansas that the inherently-dangerous exception does not extend to the employees of independent contractors.

Affirmed.