# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1751

_____

Eugene Chew, Jr.

*Plaintiff*

David Mark Duncan; Nancy Duncan, wife of David Mark Duncan

*Plaintiffs - Appellants*

Daniel Chase Hoskins; Whitney Dale Hoskins

*Plaintiffs*

v.

American Greetings Corporation

*Defendant - Appellee*

_____

No. 13-1966

_____

Eugene Chew, Jr.

*Plaintiff - Appellant*

David Mark Duncan; Nancy Duncan, wife of David Mark Duncan

*Plaintiffs*

Daniel Chase Hoskins; Whitney Dale Hoskins

*Plaintiffs - Appellants*

v.

American Greetings Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: January 13, 2014
Filed: June 12, 2014

_____

Before WOLLMAN and SHEPHERD, Circuit Judges, and WEBBER,[1] District
Judge.

_____

SHEPHERD, Circuit Judge.

David Duncan, Eugene Chew, and Daniel Hoskins (the plaintiffs), employees
of Osceola Municipal Light & Power (OMLP), brought a negligence suit against
American Greetings Corporation. The district court[2] granted American Greetings's
motion for summary judgment, and the plaintiffs appealed. We affirm.

_____

[1]The Honorable E. Richard Webber, Senior United States District Judge for the
Eastern District of Missouri, sitting by designation.

[2]The Honorable Brian S. Miller, Chief United States District Judge for the
Eastern District of Arkansas.

I.

On September 23, 2009, an American Greetings employee noticed that a stinger[3] outside American Greetings's Osceola, Arkansas facility was loose and notified the facility's maintenance supervisor of the problem. American Greetings's maintenance supervisor notified Billy Griffin, OMLP's electrical manager. Griffin then called David Duncan and directed Duncan and his crew to meet him at the American Greetings facility. When Duncan and his crew arrived, they were met by Griffin and Lance Collins, who was American Greetings's maintenance manager and was also a trained electrician. Griffin and Collins were discussing why American Greetings's plant had not lost power because of the loose stinger.

Griffin instructed Duncan to retrieve a voltmeter from his truck so the crew could read the transformer's voltage. Griffin returned with a voltmeter that had a safety rating of only 1,000 volts. When Griffin approached the transformer, the transformer's exterior and interior doors were open.[4] The transformer was designed with two doors, an outer, exterior door and an inner, flash-guard barrier door. The manufacturer nameplate, which indicated the transformer's voltage, was affixed to the inside of the exterior door. The nameplate indicated that the incoming, or primary, voltage was 13,800 volts and the outgoing, or secondary, voltage, was 4,160 volts. The inner door was painted red and warned "danger high voltage." Because the transformer doors were open, the plaintiffs were unable to read the manufacturer's nameplate when they returned with the voltmeter. After returning, Duncan asked

[3]In layman's terms, a stinger is an electrical line running from a utility pole to a transformer. The transformer steps down high voltage electricity to low voltage electricity.

[4]The parties disagree as to who opened the doors, though the parties agree that a specialized socket wrench was needed to open the inner door.

Griffin and Collins if they were going to turn off the flow of electricity to the transformer. Collins shook his head no, and Duncan proceeded to approach the secondary-side of the transformer with the inadequate voltmeter. By approaching the 4,160-volt transformer with a 1,000-volt voltmeter, Duncan created an arc flash that injured the plaintiffs. The plaintiffs knew that the transformer was energized and had been trained to measure voltage. Despite knowledge of the potential risks involved, Duncan incorrectly believed that the transformer he approached had a total voltage of 480 volts because other transformers in the area had the lower level voltage.

The plaintiffs filed this diversity suit against American Greetings in the United States District Court for the Eastern District of Arkansas. See 28 U.S.C. § 1332. The plaintiffs alleged that American Greetings's negligence, in particular, American Greetings's failure to properly label its electrical system and warn the plaintiffs of the unique nature of its transformers, caused Duncan's incorrect assumptions about the secondary transformer's voltage. American Greetings responded that pursuant to the Arkansas Supreme Court's holding in Jackson v. Petit Jean Electric Co-op., 606 S.W.2d 66 (Ark. 1980), it owed no duty to warn the plaintiffs, who were experienced electrical contractors, of the dangers of electricity and the risk of arc flash when improper equipment is used. The district court agreed with American Greetings that Petit Jean controlled and granted American Greetings's summary judgment motion. The plaintiffs appealed the district court's final judgment. See 28 U.S.C. § 1291.

## II.
### A.

We review the district court's grant of summary judgment and its interpretation of state law de novo, considering the facts in the light most favorable to the nonmoving party. See Raines v. Safeco Ins. Co., 637 F.3d 872, 874-85 (8th Cir. 2011). We will affirm the district court's grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because we are a federal court sitting in

diversity, we apply the substantive law of the forum state. See E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 663 (8th Cir. 2012). Here, all parties agree that Arkansas law applies to this case. As such, "[w]e are bound by decisions of the Arkansas Supreme Court as to the meaning of Arkansas law." See Curtis Lumber Co., Inc. v. La. Pac. Corp., 618 F.3d 762, 771 (8th Cir. 2010). When the Arkansas Supreme Court has not addressed an issue, we must predict what rule the court would adopt and may look to the Arkansas Court of Appeals for guidance in this task. See id.; Doe v. Baxter Healthcare Corp., 380 F.3d 399, 407 (8th Cir. 2004).

"Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove [1] that the defendant owed a duty to the plaintiff, [2] that the defendant breached that duty, and [3] that the breach was the proximate cause of the plaintiff's injuries." See Yanmar Co. v. Slater, 386 S.W.3d 439, 449 (Ark. 2012). "[T]he question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury." Id.; D.B. Griffin Warehouse, Inc. v. Sanders (Griffin I), 986 S.W.2d 836, 839-41 (Ark. 1999). If, as a matter of law, the defendant owed the plaintiff no duty, then "the negligence count is decided as a matter of law, and summary judgment . . . is appropriate." Griffin I, 986 S.W.2d at 840. Whether the defendant breached its duty to the plaintiff is a question of fact for the jury to resolve. See Catlett v. Stewart, 804 S.W.2d 699, 702 (Ark. 1991).

The characteristics of the parties and the circumstances of their encounter may trigger a unique duty that imposes a distinct standard of care that departs from the typical standard of ordinary care. See Kowalski v. Rose Drugs of Dardanelle, Inc., 378 S.W.3d 109, 114-15 (Ark. 2011); Clark v. Transcon. Ins. Co., 197 S.W.3d 449, 453-55 (Ark. 2004). One instance of a unique standard of care, recognized by the Arkansas Supreme Court in Petit Jean, applies to an "employer of an independent contractor," who "owes a common law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions." See 606 S.W.2d at 68. These duties, however, which are

analogous to those a premises owner owes a business invitee, do "not contemplate a duty to warn of obvious hazards which are an integral part of the work the contractor was hired to perform." Id.; Gordon v. Matson, 439 S.W.2d 627, 629 (Ark. 1969). Finally, the Petit Jean court recognized that when the employer of the independent contractor exercises control over the contractor, the employer of the independent contractor must exercise that control with reasonable care. See Petit Jean Electric Co-op., 606 S.W.2d at 68-69; see also Williams v. Nucor-Yamato Steel Co., 886 S.W.2d 586, 587-88 (Ark. 1994).

Arkansas courts have applied the principles articulated in Petit Jean to a variety of circumstances. In Petit Jean, the Arkansas Supreme Court reasoned that an electrical cooperative that hired a construction company to rebuild electrical lines had no duty "to isolate or de-energize its lines or to warn employees of [the] electrical contractor that the work as contracted for would be dangerous if not done properly." Petit Jean Electric Co-op., 606 S.W.2d at 68. The Arkansas Supreme Court reaffirmed its Petit Jean holding in Stoltze, rejecting the plaintiff's attempt to distinguish Petit Jean by claiming that he was not qualified to work around energized electrical lines. See Stoltze v. Ark. Valley Elec. Co-op., 127 S.W.3d 466, 476-77 (Ark. 2003). The court reasoned that the plaintiff's employer, an independent contractor hired by the defendant, retained the responsibility to inform the plaintiff of the dangers involved with the plaintiff's line of work. See id. Arkansas courts have applied the Petit Jean standard to risks other than those associated with electricity, including the risk that a roofer would fall through a skylight, see D.B. Griffin Warehouse, Inc. v. Sanders (Griffin II), 76 S.W.3d 254, 261-62 (Ark. 2002); Crenshaw v. Ark. Warehouse, Inc., 379 S.W.3d 515, 516-17 (Ark. Ct. App. 2010), and the risk that a commercial painter would be hit by a car when painting an entrance to a residential subdivision, see Culhane v. Oxford Ridge, LLC, 362 S.W.3d 325, 327, 329-30 (Ark. Ct. App. 2009).

The plaintiffs contend that the standards articulated in Petit Jean do not apply to this appeal because (1) OMLP had no formal, written contract with American Greetings and (2) Federal and Arkansas regulations have imposed an alternative standard of care on American Greetings. We disagree.

First, Petit Jean applies to this case despite the absence of a written contract. The plaintiffs attempt to distinguish this case from Petit Jean and other independent contractor cases because those cases have typically made reference to written contracts. See e.g., Stoltze, 127 S.W.3d at 476-77; Petit Jean Electric Co-op., 606 S.W.2d at 68. The contracts' significance in these cases, however, is that they may impose special duties upon a defendant, see Petit Jean Electric Co-op., 606 S.W.2d at 68-69, or potentially reflect a defendant's "right of control" over the contractor, see Stoltze, 127 S.W.3d at 473-74. Some cases, such as Griffin I, 986 S.W.2d at 838-40, have omitted any discussion of the written contract altogether. The written contracts may memorialize or clarify the employer-independent contractor relationship central to Petit Jean, but such relationships may also arise through conduct, see Howard v. Dallas Morning News, Inc., 918 S.W.2d 178, 182-83 (Ark. 1996). The arrangement between OMLP and American Greetings, though somewhat unique,[5] is not significantly distinguishable from the relationship contemplated by Petit Jean: an independent contractor called upon to perform a specialized task that involved obvious hazards.

Second, the Occupation Safety and Health Administration (OSHA) regulations and the Arkansas statutes and regulations that the plaintiffs cite fail to impose an alternative duty on American Greetings. Though a violation of an OSHA regulation

_____

[5]The record indicates that OMLP conveyed the transformers at issue to American Greetings in 2007 as part of an economic incentive package when American Greetings moved to Osceola. See J.A. 32, 270-71. Periodically, American Greetings would call OMLP to fix minor issues related to the electrical lines, such as blown fuses. See J.A. 363.

-7-

may be relevant evidence of whether American Greetings breached a duty it may have owed the plaintiffs, see Dunn v. Brimer, 537 S.W.2d 164, 165-66 (Ark. 1976), the regulations do not independently create private rights of action or impose alternative duties on defendants. See Solis v. Summit Contractors, Inc., 558 F.3d 815, 828-29 (8th Cir. 2009); see also 29 U.S.C. § 653(b)(4) ("Nothing in this chapter shall be construed to . . . enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment."); Koch v. Northport Health Servs. of Ark., LLC, 205 S.W.3d 754, 766 (Ark. 2005) (reasoning that a federal regulation did not provide the "relevant standard of care" but, nonetheless, could still serve as "evidence of the types of considerations that should bear on the reasonable person").[6]  Similarly, Arkansas courts have been hesitant to permit Arkansas statutes and regulations to expand common law causes of action, see Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC, 400 S.W.3d 701, 711 (Ark. 2012); Kowalski, 378 S.W.3d at 118-19, and only do so when faced with clear legislative intent. See Shannon v. Wilson, 947 S.W.2d 349, 356-58 (1997).  The plaintiffs have failed to identify any Arkansas statutes or regulations that clearly impose duties on persons in the position of American Greetings, much less an Arkansas case supporting their claim that American Greetings owed them an alternative duty.

Satisfied that the principles set forth in Petit Jean and its progeny control this case, we now apply Petit Jean.

## B.

This case fits within the no-duty rule articulated by Petit Jean, and thus the plaintiffs' negligence claim fails.  The plaintiffs were independent contractors

---

[6]We express no opinion on whether American Greetings was an "employer" as the term is used in OSHA's regulations.

brought to American Greetings's facility by their supervisor to perform electrical work. The plaintiffs, much like the plaintiffs in <u>Stoltze</u> and <u>Petit Jean</u>, were experienced electrical workers, who understood the obvious risks of electricity inherent in their profession. <u>See</u> <u>Stoltze</u>, 127 S.W.3d at 469, 476; <u>Petit Jean Electric Co-op.</u>, 606 S.W.2d at 68. Moreover, the plaintiffs' injuries, much like the plaintiffs' injuries in <u>Stoltze</u> and <u>Petit Jean</u>, arose because of the dangerous nature of electrical work. Evidence of American Greetings's alleged failure to apply best safety practices and its failure to deenergize the transformer does not give rise to a material question of fact because these actions directly relate to the obvious, core hazard an electrical utility worker faces—the danger of electricity when approached with improper equipment. <u>See</u> <u>Petit Jean Electric Co-op.</u>, 606 S.W.3d at 68. The principles established in <u>Petit Jean</u> acknowledge that the contractor is best able to assess the obvious risks inherent in the contractor's chosen trade. Here, the plaintiffs had years of experience working with OMLP, understood the danger of approaching a transformer with incompatible equipment, and had been trained to measure voltage. Moreover, as employees of OMLP, the plaintiffs were compensated for working in a field that involved the inherent risks of electricity.

Further, because American Greetings did not exercise control over the plaintiffs' work, American Greetings acquired no additional duties. Without a contract memorializing the parties' rights and obligations, we analyze the parties' conduct to determine whether American Greetings retained control over the plaintiffs. <u>See</u> <u>Nucor-Yamato Steel Co.</u>, 886 S.W.2d at 587. In their effort to show control, the plaintiffs rely on Collins's decision to keep power flowing to the transformer. This single fact is insufficient to show American Greetings exercised control over the plaintiffs and the worksite. The plaintiffs, who were employees of OMLP, were called to American Greetings's facility by their OMLP manager Griffin, who was present at the facility when they arrived. Griffin directed Duncan to retrieve the voltmeter, and Griffin directed Duncan to check the voltage of the transformer. Though Collins allegedly determined that the power should not be turned off, Duncan

testified that Griffin was principally responsible for the plaintiffs and that Griffin was ultimately the boss. J.A. 72, 79. In sum, the plaintiffs were under the control of Griffin, who directed the means, methods, and details of the plaintiffs' work, not American Greetings. See Nucor-Yamato Steel Co., 886 S.W.2d at 587-88 (reasoning that the employer of an independent contractor must do more than make suggestions or recommendations or prescribe alterations or deviations in order to retain control); Davis v. Lingl Corp., 641 S.W.2d 27, 29 (Ark. 1982) (reasoning that none of the general contractor defendants "retained the right or undertook to control or supervise the manner in which" the plaintiff worked and therefore could not be liable for the plaintiff's injuries); accord Koch Refining Co. v. Chapa, 11 S.W.3d 153, 156 (Tex. 1999) (per curiam) ("Every premises owner must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability.").

Finally, this case does not involve American Greetings's general duty to warn of latent or hidden dangers. According to the plaintiffs, Petit Jean imposed upon American Greetings a duty to warn of latent dangers. The plaintiffs assert that the hazards the transformer posed were hidden or latent because American Greetings failed to properly label the transformer, the transformer doors were open and blocking the warning labels, and the transformers were arranged in a unique manner. In the abstract, the plaintiffs are correct that an employer of an independent contractor owes a duty to warn of latent or hidden dangers. The plaintiffs, however, misconstrue the scope of this duty, which does not encompass an obligation to warn of the latent characteristics of an obvious hazard that arises because of the nature of the contractor's work. In Griffin II, which involved a wrongful-death suit brought by the widow of a roofing contractor who fell through a roof skylight and died, the plaintiff presented testimony at trial that one of the roof's skylights was rotting. Griffin II, 76 S.W.3d at 261-63. The plaintiff claimed that according to Petit Jean this was a hidden or latent hazard. On appeal, however, the Arkansas Supreme Court reasoned that testimony about the rotting skylight was "irrelevant" because the skylight presented

-10-

an obvious danger, even if aspects of the skylight (i.e., that it was rotting) remained hidden.  Id. at 263.

Here, the risk of working around electricity, specifically the risk that an arc flash would occur if a transformer was approached with improper equipment, was an obvious risk inherent in the plaintiffs' work.  Though some details about American Greetings's transformers may have been hidden, like the alleged rotting skylight in Griffin II, the ultimate hazard the transformer posed was obvious, and the contractors retained the ultimate responsibility to assess these risks.  See id. at 263; see also Crenshaw, 379 S.W.3d at 517 ("The skylights may have in fact been hidden to some extent, but the danger of falling through them was an obvious one in light of the [plaintiff] roofer's knowledge that those skylights existed.").  The transformer became hazardous to the plaintiffs because they engaged with it in the course of their work. American Greetings did not exercise control over the plaintiffs and accordingly had limited ability to ensure that the plaintiffs performed their work safely.  Instead, the party in control of the plaintiffs, their employer OMLP, was responsible for overseeing the plaintiffs.

To conclude, American Greetings owed the plaintiffs no duty to warn of the well-known hazard of approaching a charged transformer with improper equipment. Likewise, because the nature of the plaintiffs' work necessarily implicated these obvious hazards, American Greetings owed no duty to exercise ordinary care for the plaintiffs' safety.  Because the plaintiffs have failed to demonstrate that American Greetings owed them a duty, their negligence claims fail as a matter of law.

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of American Greetings.

_____

-11-