# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3687
_____

Shawn Royal; Regina Royal

*Plaintiffs - Appellants*

v.

Missouri & Northern Arkansas Railroad Company, Inc.; RailAmerica, Inc.;
Genesee & Wyoming, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: April 6, 2017
Filed: May 22, 2017

_____

Before GRUENDER, MURPHY, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Shawn Royal, a North American Railway Services ("NARS") employee, and his wife, Regina Royal, sued Missouri & Northern Arkansas Railroad Company ("MNA") for injuries he sustained while working on MNA's railroad tracks. They sought relief pursuant to the Federal Employers' Liability Act ("FELA") and under

Arkansas negligence law. The district court[1] granted MNA's motion for summary judgment, and the Royals appealed. For the reasons discussed below, we affirm.

In February 2012, NARS entered into a Master Service Agreement with RailAmerica Transportation Corporation ("RailAmerica") to provide track-related services to RailAmerica's affiliated and subsidiary railroads. At the time, MNA was a wholly owned subsidiary of RailAmerica. The Agreement stipulated that NARS "is not an agent, representative, or employee of [RailAmerica] or any of its Railroads, but rather is an independent contractor." The Agreement also stated that NARS "shall be responsible for all actions of its employees, subcontractors, agents and representatives" while working at the railroad sites and that RailAmerica and its subsidiaries had the right to inspect and test NARS's work and direct NARS to make corrections as needed.

NARS employed Shawn Royal to operate a ballast regulator and sent him to perform maintenance work at several different railroad locations. NARS provided Royal with safety training and equipment instruction, furnished his personal protective and service equipment, and was responsible for all of his compensation. Pursuant to his employment with NARS, Royal did maintenance work on MNA's railroad tracks, which involved operating a machine that picked up and spread ballast, the stone or material placed around railroad tracks that provides structural support, drainage, and erosion protection. While working as a NARS employee on MNA's railroad tracks, Royal was required to abide by RailAmerica-MNA safety guidelines. For example, the safety guidelines directed NARS employees to refrain from drug or alcohol use while on the job. Furthermore, for certain forms of railroad maintenance work, the safety guidelines mandated job briefings with MNA employees or for an MNA employee to be present. An MNA employee would also coordinate locations

---

[1] The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

and schedules for work assignments. Nonetheless, Royal's chain of command consisted only of NARS employees, and NARS maintained sole authority to discipline or fire Royal. While Royal testified that MNA often told him to "hurry up," he also stated that MNA did not rush him on the day of the incident and never directed or controlled how he was to perform his work.

On September 25, 2012, Royal was operating his ballast regulator on MNA's railroad tracks when his machine picked up and struck a piece of "rip-rap," a large rock mixed in with the smaller ballast. In certain areas around railroad tracks, rip-rap is commonly placed for structural integrity. However, rip-rap can also be dangerous because if it is pulled onto the railroad tracks, a ballast regulator may run over it, abruptly stopping the machine and injuring the driver. Royal often encountered rip-rap while working on his ballast regulator; was trained to spot it; and had struck a piece three weeks prior, bringing his machine to a sudden stop. This time, Royal struck the rip-rap and was thrown forward, causing back injuries.

The Royals sued MNA claiming that MNA supervised and controlled Shawn Royal's work, and as such, he was MNA's employee and entitled to hold MNA liable under FELA. Additionally, the Royals alleged that MNA was liable for negligently placing rip-rap in the ballast section near its railroad tracks. The district court granted MNA's motion for summary judgment, and the Royals now appeal.

We review a district court's grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party and giving the non-moving party the benefit of reasonable inferences evident from the record. *Francisco v. Burlington N. R.R. Co.*, 204 F.3d 787, 789 (8th Cir. 2000). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Royals challenge the district court's grant of summary judgment on both the FELA and Arkansas negligence claims.

FELA allows employees of interstate railroads to recover against railroads for injuries sustained in the course of employment. *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889-90 (8th Cir. 2012). FELA states that "[e]very common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." 45 U.S.C. § 51. Thus, in order to maintain a FELA action against MNA, the Royals must demonstrate that Royal was employed by MNA.

While the Royals concede that Royal was formally an employee of NARS, not MNA, they are correct that our inquiry does not end there. In *Kelley v. Southern Pacific Co.*, the Supreme Court noted that for FELA purposes, "employment" describes a master-servant relationship "determined by reference to common-law principles." 419 U.S. 318, 323 (1974). Under the common law, a plaintiff can establish employment with a railroad carrier even while nominally employed by another if he can show he is (1) a borrowed servant, (2) a dual servant, or (3) a subservant. *Id.* at 324. Determining whether a plaintiff constitutes a borrowed servant, dual servant, or subservant turns on whether the railroad controlled or had the right to control the plaintiff's performance of his job. *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 198-99 (8th Cir. 1981) (citing *Kelley*, 419 U.S. at 322-26).

Royal does not qualify as MNA's employee because the evidence shows that NARS was the sole entity that had the right to control his work. Royal's chain of command consisted only of NARS employees. NARS hired him, trained him, and sent him to do maintenance work on railroads. NARS was responsible for all of Royal's compensation and maintained sole authority to discipline or fire him. Furthermore, NARS provided all safety training and equipment instruction to Royal and furnished all his personal protective and service equipment. Royal responds that MNA nonetheless controlled or had the right to control his work because MNA employees often told him to "hurry up," he was required to abide by RailAmerica-MNA safety guidelines, MNA employees inspected his work, and an onsite MNA

-4-

employee coordinated locations and schedules for work assignments. These facts, however, are immaterial because they would not allow a reasonable jury to find that MNA controlled or had the right to control Royal's work.

First, Royal's testimony that MNA employees told him to hurry up is not a material fact when examined against the backdrop of his entire testimony. Elsewhere, Royal testified that nobody rushed him on the day of the incident and that MNA never directed him on how to operate his ballast regulator. Thus, Royal's lone reference to being hurried is not enough to allow a reasonable jury to find that MNA controlled or had the right to control Royal's work. *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010) ("A mere 'scintilla of evidence' is insufficient to defeat summary judgment." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986))).

Second, the mere existence of safety guidelines does not suggest that MNA had the right to control Royal's work. The obligation to conform to safety requirements was a "mutually agreed upon practice[] that merely insured worker and premises safety." *Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 669, 674 (6th Cir. 2010) (holding that adherence to a railroad's safety protocols is not enough to show a contractor's employees were railroad employees). The agreement to abide by certain safety regulations is a reasonable request necessary to safeguard against dangerous work and does not constitute control or supervision. *See id.* at 674.

Finally, MNA's inspection of NARS's and Royal's work and its coordination of locations and schedules for work assignments are likewise insufficient to indicate that MNA had the right to control Royal's work. "[M]inimum cooperation necessary to carry out a coordinated undertaking . . . cannot amount to control or supervision," *Shenker v. Baltimore & Ohio R.R. Co.*, 374 U.S. 1, 6 (1963) (citation omitted), because evidence of contacts between a railroad's employees and a contractor's employees "may indicate, not direction or control, but rather the passing of

information and the accommodation that is obviously required in a large and necessarily coordinated operation," *Kelley*, 419 U.S. at 329. As a result, "[t]he mere fact that a railroad reserves the right to assure performance in accordance with the specifications of the contract does not render [the] contractor a railroad employee." *Morris v. Gulf Coast Rail Grp., Inc.*, 829 F. Supp. 2d 418, 424 (E.D. La. 2010). Accordingly, we conclude that no reasonable jury could find that MNA controlled or had the right to control Royal's work and therefore affirm the district court's grant of summary judgment on the Royals' FELA claim.

The Royals next assert that the district court erred in dismissing their claim that MNA negligently placed rip-rap in the ballast section near its railroad tracks. We apply Arkansas law and "are bound by decisions of the Arkansas Supreme Court." *See Chew v. Am. Greetings Corp.*, 754 F.3d 632, 635 (8th Cir. 2014) (quotation omitted). In order to establish a *prima facie* case of negligence under Arkansas law, "a plaintiff must show that damages were sustained, that the defendant breached the standard of care, and that the defendant's actions were the proximate cause of the damages." *Union Pac. R.R. Co. v. Sharp*, 952 S.W.2d 658, 661 (Ark. 1997). "The issue of whether a duty exists is always a question of law, not to be decided by a trier of fact. If no duty of care is owed, summary judgment is appropriate." *Lacy v. Flake & Kelley Mgmt., Inc.*, 235 S.W.3d 894, 896 (Ark. 2006) (citations omitted).

"[A]n employer of an independent contractor owes a common law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions." *Jackson v. Petit Jean Elec. Co-op.*, 606 S.W.2d 66, 68 (Ark. 1980). This duty, however, "does not contemplate a duty to warn of obvious dangers which are an integral part of the work the contractor was hired to perform." *D.B. Griffin Warehouse, Inc. v. Sanders*, 76 S.W.3d 254, 262 (Ark. 2002). The Royals do not disagree with these statements of law or even MNA's contention that rip-rap is an obvious danger in this line of work. The Royals do claim, however, that the dangers posed by rip-rap in this case are not

obvious because MNA negligently placed rip-rap in a section of the tracks where it did not belong. We are not persuaded by their argument.

In *Chew v. American Greetings Corp.*, we applied an Arkansas Supreme Court case, *D.B. Griffin Warehouse, Inc. v. Sanders*, 76 S.W.3d 254 (Ark. 2002), and found that an employer of independent-contractor electrical workers owed no duty to warn of the danger in approaching a transformer with improper equipment because the work necessarily implicated these obvious hazards. 754 F.3d at 639. The plaintiffs argued that the defendant failed to warn them of the "unique nature of its transformers, [which] caused [the plaintiff's] incorrect assumptions about the [transformer's voltage]." *Id.* at 635. We held that "though some details about [the] transformers may have been hidden, . . . the ultimate hazard the transformer posed was obvious, and the contractors retained the ultimate responsibility to assess these risks." *Id.* at 639 ("[The] duty to warn of latent or hidden dangers. . . . does not encompass an obligation to warn of the latent characteristics of an obvious hazard that arises because of the nature of the contractor's work.").

This logic applies here with equal force. The dangers posed by rip-rap were obvious. Royal testified that he was trained to operate his machine in an area with rip-rap, that he had noticed there was rip-rap along the railroad in the area where he was operating, that it was a common occurrence to pull rip-rap from outside the rails to inside the rails, and that he had previously struck a piece of rip-rap on this same MNA railroad line. Thus, "[t]hough some details about [the rip-rap] may have been hidden, . . . the ultimate hazard [the rip-rap] posed was obvious, and [Royal] retained the ultimate responsibility to assess these risks." *See id.* at 639. We determine that MNA did not owe Royal a duty to warn of the well-known dangers of rip-rap and that the Royals' negligence claim therefore fails as a matter of law.

Accordingly, we affirm the district court's grant of summary judgment.

_____