**FIRST DIVISION
BARNES, P. J.,
MILLER, P. J., and MARKLE, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**September 24, 2021**

# In the Court of Appeals of Georgia

A21A0990. FROSS v. NORFOLK SOUTHERN RAILWAY
COMPANY.

MARKLE, Judge.

Professional Transportation, Inc. (PTI) employee, Donna Fross, was injured while working at Norfolk Southern Railway Company's rail yard. She sued Norfolk Southern, asserting a claim under the Federal Employers' Liability Act (FELA), 45 USC § 51 et seq. The trial court granted summary judgment to Norfolk Southern, finding that Fross was not its employee for the purposes of FELA. Fross now appeals, arguing that the trial court erred because there is at least a question of fact as to whether she was Norfolk Southern's employee under FELA. She further argues that the trial court should not have dismissed the entire case because she pled an alternative state law claim for negligence. For the reasons that follow, we conclude

that Fross was not an employee of Norfolk Southern under FELA, and therefore affirm the trial court's judgment as to this issue. However, because the trial court did not rule on whether the alternative state law claim was sufficiently pled, we vacate the final order in part, and remand the case for further proceedings.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Thurman v. TCFPA Family Med. Centers*, 358 Ga. App. 439, ___ (855 SE2d 431, 432) (2021).

So viewed, the record shows that PTI and Norfolk Southern entered into a services contract under which PTI agreed to provide vehicles and drivers to transport Norfolk Southern's train crews at its Georgia locations, including the Inman Yard. PTI hired Fross as a transport driver, and she was eventually assigned to the Inman Yard. While there, Fross drove a van to pick up train crews and drop them off at various locations in the rail yard, as requested by the Norfolk Southern yardmaster.

Specifically, Fross used a two-way radio in her van to announce to the Norfolk Southern yardmaster that she was on duty, and then she would wait for the request for a crew transport. The yardmaster would provide the originating location of the crew members and tell her where to bring them, and would also impose time limits on these trips. Except when a specific route was required due to obstructions caused by trains or other conditions, Fross could choose what route to take based on maps of the rail yard provided by PTI.

At the beginning of each shift, Fross was required to clock-in on a computer PTI had furnished in the van, and she would also use this computer to log every trip she took to transport train crews. PTI trained and paid Fross, but she was also required to follow Norfolk Southern's safety guidelines, which were applicable to all of its contractors. If Norfolk Southern had a complaint about her work performance, the issue was handled by Fross's PTI supervisor. Fross attended monthly PTI employee meetings, and she met with her PTI supervisor once or twice a week.

On the day of the incident, after dropping off a crew, Fross exited her van to perform a visual check to ensure she could back out safely, as required by her training. As she was returning to the driver's side of the van, she slipped and fell

backwards on the ballast, injuring herself. Fross received workers' compensation benefits from PTI.

Fross sued Norfolk Southern, alleging that it was her employer, and was thus liable under FELA.[1] She filed a motion for partial summary judgment, seeking a determination that she was an employee of Norfolk Southern for FELA purposes. Norfolk Southern filed a cross-motion for summary judgment, contending that it was not Fross's employer under FELA. After a hearing, the trial court found, as a matter of law, that Norfolk Southern was not Fross's employer. This appeal followed.

1. In related enumerations of error, Fross contends that the trial court erred by granting summary judgment to Norfolk Southern because there was at least a question of material fact as to whether she was its employee for FELA purposes. Having thoroughly reviewed the record, we affirm the trial court's finding that Fross was not an employee of Norfolk Southern at the time of her accident as a matter of law.

---

[1] Fross insists that she stated an alternative claim for common law negligence. In light of our ruling in Division 2, we reach no conclusion regarding the sufficiency of the pleadings.

FELA provides an exclusive tort remedy to railroad employees injured during the course of their employment.[2] 45 USC § 51; *Norfolk Southern R. Co. v. Lewis*, 345 Ga. App. 196, 197 (813 SE2d 165) (2018); *Brooks-Powers v. MARTA*, 260 Ga. App. 390, 394 (1) (579 SE2d 802) (2003). Whether an injured party was acting as an employee of the railroad at the time of the accident is determined by federal law, and is typically a question of fact.[3] *Lindsey v. Louisville & Nashville R. Co.*, 775 F2d 1322, 1324 (I) (5th Cir. 1985); *Moss v. Central of Ga. R. Co.*, 135 Ga. App. 904, 905 (219 SE2d 593) (1975) ("[T]he problem of whether an FELA plaintiff is an independent contractor or an employee is a problem of federal law."). However, where reasonable minds could not differ on the issue, summary judgment is properly granted. *Baker v. Texas & Pacific R. Co.*, 359 U. S. 227, 228 (79 SCt 664, 3 LE2d 756) (1959).

---

[2] State and federal courts have concurrent jurisdiction over FELA claims, pursuant to 45 USC § 56.

[3] Because we look to the prevailing federal case law in deciding this threshold issue, we are unpersuaded by Fross's reliance on Georgia cases that do not involve FELA claims. See *Moss v. Central of Ga. R. Co.*, 135 Ga. App. 904, 905 (219 SE2d 593) (1975) (refraining from applying Georgia case law to the question of plaintiff's employment status under FELA).

In *Kelley v. Southern Pacific*, 419 U. S. 318 (95 SCt 472, 42 LE2d 498) (1974), the United States Supreme Court applied common law agency principles to determine whether an employee of a third-party contractor of a railroad may be deemed an employee of the railroad:

> [T]here are basically three methods by which a plaintiff can establish his 'employment' with a rail carrier for FELA purposes even while he is nominally employed by another. First, the employee could be serving as the borrowed servant of the railroad at the time of his injury. Second, he could be deemed to be acting for two masters simultaneously. Finally, he could be a subservant of a company that was in turn a servant of the railroad.

(Citations omitted.) Id. at 324 (II); see also *Estate of Anderson v. Martin Marietta Materials*, 255 Ga. App. 844, 846 (1) (567 SE2d 33) (2002).

Here, Fross argues that her FELA claim survives because she was either a borrowed servant or a dual servant.[4] Under either theory, Fross must show that

---

[4] Under the borrowed servant doctrine, "[a] servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others." Restatement (Second) of Agency § 227 (2021). Whereas a dual servant is defined as "[a] servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other." Restatement (Second) of Agency § 226 (2021).

Norfolk Southern maintained "a significant supervisory role" over her work at the time of her injury. *Kelley*, 419 U. S. at 327 (III). In other words, "[t]he pre-eminent criterion for determining the status of a contractor in an FELA action is the right of the railroad to direct, supervise and control the contractor in the course of [her] work." *Moss*, 135 Ga. App. at 905.

> Importantly,

> [t]he railroad need not have full supervisory control, but its supervisory role must be significant. The mere reservation of authority to ensure performance as contemplated by a contract is not sufficient control to turn a nominal contractor into an employee. The control necessary to establish an employment relationship is also more than just the power of mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking. Likewise, the passing of information and the accommodation obviously required in a large and necessarily coordinated operation do not prove sufficient supervisory control. Rather, to establish an employment relationship, the communications between the railroad and the contractor must assume a supervisory character.

(Citations and punctuation omitted.) *Wheeler v. Norfolk Southern R. Co.*, 6 F4th 626, 630-631 (II) (5th Cir. 2021).

Applying these standards, Fross's argument that Norfolk Southern had a significant supervisory role over the course of her work fails. Rather, the evidence of record shows that any authority Norfolk Southern exerted over Fross was in the nature of "the necessary cooperation" or "the passing of information and the accommodation" to PTI in carrying out the terms of the services contract. See *Wheeler*, 6 F4th at 631 (II); *Kelley*, 419 U. S. at 329-330 (III); see also *Royal v. Missouri & Northern Arkansas R. Co.*, 857 F3d 759, 763-764 (8th Cir. 2017).

Notably, the clear terms of the contract refute Fross's assertion that she was a borrowed or dual servant of Norfolk Southern:

> [PTI] is and shall remain an independent contractor. [PTI] shall be solely responsible for, and [Norfolk Southern] shall not participate in, the employing or supervising of each Person engaged in discharging [PTI's] responsibilities under this Contract; all such Persons shall be the sole agents, servants and employees of [PTI]. . . . Nothing contained in this Contract shall be deemed or interpreted to create a joint venture or undertaking or to constitute either [PTI] as agent (for any purpose) of [Norfolk Southern] or [Norfolk Southern] as agent (for any purpose) of [PTI].

See *Estate of Anderson*, 255 Ga. App. at 845, 846 (1) (finding railroad did not control independent contractor's work where, among other things, services contract did not grant railroad supervisory authority over contractor's employees); see also *Moss*, 135 Ga. App. at 906 (a factor in determining the plaintiff's status as an independent contractor or an employee is "whether or not the parties believe they are creating an agency relationship").

To support her position, Fross focuses on certain provisions of the services contract under which Norfolk Southern reserved the rights to specify which routes the PTI drivers used; to require PTI drivers to pass background checks and, upon doing so, to be issued badges allowing them access to the rail yard; to require compliance with its general safety rules and guidelines while operating on its property; and to ban individual drivers from its property for safety infractions and the like.

These terms, however, are not markers of Norfolk Southern's day-to-day supervision of Fross, but instead are reasonable, "mutually agreed upon practices that merely insured worker and premises safety."[5] *Campbell v. BNSF R. Co.*, 600 F3d 667,

---

[5] To the extent that Fross contends Norfolk Southern's right to ban her from the rail yard is tantamount to firing her, and thus evidences its control over her, this same argument was rejected in *Wheeler*. 6 F4th at 632 (II). Here, the contract provision regarding banishment clearly applies to safety and security infractions, and is better

674 (II) (6th Cir. 2010); see also *Wheeler*, 6 F4th at 632 (II) (such safety "requirements are unsurprising in the context of an independent-contractor relationship").

Fross next asserts that Norfolk Southern retained a significant supervisory role over the course of her work because its yardmaster issued orders as to the time, manner, and method of her job. However, this argument is inconsistent with Fross's deposition testimony that she maintained the discretion to choose the routes she took based on maps PTI provided, except when the usual paths were obstructed and further direction was required. For example, Fross confirmed that the yardmaster did not typically instruct her on how to get the crews from one point to another:

> Q: And they don't tell you how to do that, right, they just tell you the job that needs to be done and you go and do it?
> A: Yes, ma'am.
> Q: They don't control how you do it?
> A: No, ma'am.

---

categorized as a mutual effort to insure the safety of the premises. See id.; *Campbell*, 600 F3d at 674 (II). Moreover, the contract expressly provides that "[t]he decision to bar any [PTI] Party from [Norfolk Southern] property shall not be interpreted as a request for [PTI] to fire the individual(s)." See *Wheeler*, 6 F4th at 632 (II) (noting the services agreement disclaimed the right of either the contractor or the railroad to terminate or demand the termination of the other's employees).

Norfolk Southern argues that any self-serving assertions in Fross's affidavit, specifically with regard to its control over the routes, should be discounted because they conflicted with this later deposition testimony, pursuant to the rule in *Prophecy v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986).

Pretermitting whether these statements are inconsistent, Fross still fails to create a question of fact as to her employment status. Although the yardmaster told her where to pick up the crew members, and where to deliver them, there is no evidence of record that Norfolk Southern specified the location where she *parked* the van at the time of her injury. To the contrary, Fross testified that she exercised her discretion in deciding where to park that day. See *Kelley*, 419 U.S. at 327 (noting that the trial court made no specific finding that plaintiff was supervised by railroad employees at the time of the injury); *Royal*, 857 F3d at 763 (no evidence that plaintiff was "hurried" by railroad employees or otherwise directed by them as to the use of his machinery at the time of the accident). As such, Fross fails to show that Norfolk Southern's involvement in the crew transports was anything more than the "[m]inimum cooperation necessary to carry out a coordinated undertaking," and thus it did not amount to a significant supervisory role over her work. (Citation and punctuation omitted.) *Royal*, 857 F3d at 763-764; see also *Kelley*, 419 U. S. at 327

11

(III) (railroad employees' safety inspection of train cars from which contractor's employees unloaded vehicles "reflect . . . that the activities of the two companies were closely related and necessarily had to be coordinated," and did not compel a finding that plaintiff was employed by railroad); *Wheeler*, 6 F4th at 632.

Fross next contends that the back-up check that resulted in her injury was required by Norfolk Southern's general rules, and is therefore proof of its supervisory role. Although she is correct that this procedure is required under Norfolk Southern's general guidelines, it is also required by PTI's driver's manual. Therefore, to the extent that this requirement evinces any supervisory role or control by Norfolk Southern, it is in the nature of "mutually agreed upon practices that merely insured worker and premises safety." *Campbell*, 600 F3d 667, 674 (II); see also *Royal*, 857 F3d at 763 ("[T]he mere existence of safety guidelines does not suggest [railroad] had the right to control [plaintiff's] work."). As such, Norfolk Southern's general safety guidelines do not raise a question of fact as to its right to control Fross's work. *Royal*, 857 F.3d at 763.

Finally, Fross points to the absence of a PTI supervisor at the train yard in general, and particularly at the time of her injury, as proof of Norfolk Southern's significant supervisory role. In support of this proposition, Fross cites to *Buccieri v.*

*Illinois Central Gulf R.*, 235 Ill. App. 3d 191 (601 NE2d 840) (1992). There, in finding that a question of fact remained as to whether the railroad controlled the plaintiff's work, the court considered the lack of supervisory personnel from the plaintiff's nominal employer at the site where the plaintiff was injured. Id. at 200-201. However, there was also evidence in *Buccieri* that the plaintiff used the railroad's equipment; his work was inspected by railroad employees; if he made a mistake, railroad employees supervised the corrections; and railroad employees instructed his crew to perform the task in the manner that ultimately resulted in his injury. Id. Because there is no such additional evidence here, *Buccieri* is distinguishable from the case at hand.[6]

Here, the record is clear that Fross was hired, trained, scheduled, and compensated by PTI. She reported her time to PTI, was under its chain of command, and subject to discipline from its managers for any work infractions. She drove a van provided by PTI to perform her job duties, and she maintained discretion in carrying

---

[6] We are similarly unpersuaded by Fross's reliance on *Lindsey v. Louisville & Nashville R. Co.*, 775 F2d 1322 (5th Cir. 1985). There, unlike the instant case, the railroad gave specific directions regarding the day-to-day tasks performed by plaintiff and inspected his work. Id. at 1324 (I). Additionally, the plaintiff received his paycheck at the rail yard, and never reported to the independent contractor's offices. Id.

out her specific duties except in exigent circumstances. Importantly, Fross exercised this discretion at the time of her injury, specifically, with regard to her decision as to where to park the van. Consequently, the record fails to present a material question of fact as to whether Norfolk Southern retained a significant supervisory role over Fross's work at the time of her accident.[7] See *Kelley*, 419 U. S. at 327 (III); *Wheeler*, 6 F4th at 630-631 (II).

Accordingly, we conclude, as a matter of law, that PTI — not Norfolk Southern — was Fross's employer under FELA. We thus affirm the trial court's judgment as to this claim.[8]

2. Fross next contends that the trial court erred by disposing of the case in its entirety because her alternative state law claim for negligence remained pending,

---

[7] On appeal, both parties address the factors from the Restatement (Second) of Agency § 220 as referenced in *Moss*. 135 Ga. App. at 906. We note that Fross took the opposite approach at the hearing before the trial court, arguing that these factors should not apply to the analysis in light of the prevailing federal law. In any event, most, if not all, of the *Moss* factors are covered in the analysis above, and we conclude that they favor Norfolk Southern.

[8] Fross argues that the trial court erred by impermissibly weighing the evidence. In light of our ruling above, we need not address this enumeration of error. To the extent that the trial court's findings were inconsistent, our review is de novo, and we affirm a judgment that is right for any reason. *Walleye v. City of Forest Park*, 322 Ga. App. 562, 563 (745 SE2d 781) (2013).

14

regardless of the trial court's ruling on her motion for partial summary judgment. Because this issue was not raised below or ruled on by the trial court, we vacate the order to the extent it disposed of this action in its entirety, and we remand the case for further proceedings.

Norfolk Southern argues that the trial court properly dismissed the entire action because Fross failed to sufficiently plead a claim for common law negligence. However, Norfolk Southern's argument on appeal overlooks its counsel's representations to the trial court at the motion hearing, where its attorney stated:

> Irrespective of what Your Honor does for this motion, there will still be a common law negligence claim existing in the case for this slip and fall or trip and fall claim. So the sole focus of both motions is for the Court to decide whether FELA should apply here, and the issue with respect to that, whether those federal laws apply, is whether this PTI employee is also considered by the Court to be an employee of Norfolk Southern.

Consequently, this issue was not raised at the summary judgment stage. Moreover, the trial court's order addressed only the FELA claim, and mistakenly referred to Fross's motion as one for summary judgment — not for partial summary

15

judgment.[9] As such, the trial court made no ruling with regard to Fross's state law claim, if any. Therefore, in the absence of a ruling below, we will not address this issue. *Pyle v. City of Cedartown*, 240 Ga. App. 445, 447 (3) (524 SE2d 7) (1999) (construing trial court's order as one for *partial* summary judgment where it granted summary judgment on two of plaintiff's claims, but was silent as to others; and declining to reach issues that were not ruled on below); see also *Pneumo Abex v. Long*, 357 Ga. App. 17, 29 (2) (849 SE2d 746) (2020) ("As we have repeatedly explained, this is a Court for the correction of errors of law, and if the trial court has not ruled on an issue, we will not address it. Indeed, without a ruling by the trial court on a particular issue, there is nothing for this Court to review upon appeal.") (citations and punctuation omitted).

Accordingly, we vacate the trial court's order to the extent that it disposed of this action in its entirety, and remand the case for further proceedings on this ground.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Barnes, P. J., and Miller, P. J., concur.*

---

[9] It is also noteworthy that Norfolk Southern refers to its motion as one for partial summary judgment in at least one instance in its briefs below.